IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROSETTA MAY DINKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CV 08-856-KI |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | OPINION AND ORDER |
| Security, ) | |
| ) | |
| Defendant. ) | |

KING, J.,

    Plaintiff Rosetta Dinkins challenges the Commissioner's decision denying her applications for disabled widow's benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, I reverse the Commissioner's decision and remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

1 - OPINION AND ORDER

The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Dinkins retained the residual functional capacity ("RFC") to perform her past relevant work as a telemarketer and is not disabled. Admin. R. 18-19. The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

Dinkins contends the ALJ erred at step two of the decision-making process by failing to find depression, anxiety, glaucoma, and hypertension severe impairments having significant impact on her ability to perform basic work activities. She contends the ALJ failed to assess her RFC accurately because he did not properly evaluate the opinion of her primary care provider, the observations of the lay witness, and the reported side effects of her medications. Dinkins contends the ALJ's RFC assessment is inadequate to support his decision because it does not show that she can sustain work on a full-time basis.

### I.   Severe Impairments

Dinkins contends the ALJ erred at step two by failing to identify depression, anxiety, hypertension, and glaucoma when specifying her severe impairments. At step two, a claimant must meet what is called the severity requirement. The ALJ must determine whether the claimant has any combination of impairments which significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not meet this severity requirement, the ALJ must find her not disabled and need not continue the disability determination process beyond step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Here, the ALJ resolved step two in Dinkins's favor, finding her ability to work significantly affected by degenerative disc disease of the lumbar spine and the residual effects of back surgery. Admin. R. 13. The ALJ properly continued the decision-making process until reaching a determination at step four. Any error in designating specific impairments severe did not prejudice Dinkins. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision).

Dinkins's argument may be construed as a challenge to the ALJ's RFC assessment. Once a claimant has surmounted step two by meeting the severity requirement, the ALJ must consider in the remaining steps of the decision all evidence of functional limitations imposed by medically determinable impairments, including any impairments that were not identified as severe at step two. 20 C.F.R. §§ 404.1523, 416.923. Accordingly, the ALJ was required to consider all the evidence of functional limitations from depression, anxiety, glaucoma, and hypertension in assessing Dinkins's RFC.

In December 2003, Dinkins established primary care with Von Chang, M.D., and reported she had been prescribed Zoloft for anxiety by her previous doctor. Dr. Chang continued Dinkins on Zoloft and noted she had no current severe anxiety or history of panic. Admin. R. 242. In August 2005, Dinkins transferred primary care to Michael Hicken, M.D. Regarding mental health, Dr. Hicken noted only that her depression was stable. *Id.* at 229. In January 2006, the agency reviewing psychologist reviewed all the medical evidence and found Dinkins had no current symptoms or

3 - OPINION AND ORDER

complaints of mental health issues; the only evidence of mental health treatment in the record was her prescription for Zoloft. *Id.* at 213. In December 2007, Dr. Hicken completed a mental residual functional capacity worksheet indicating Dinkins had mental impairments limiting her abilities to sustain concentration and persistence, complete a normal work schedule, interact appropriately with the general public, coworkers, and supervisors, travel to unfamiliar places and use public transportation, and set realistic goals. *Id.* at 252-53. Dinkins relies on Dr. Hicken's worksheet to assert the presence of severe mental impairments.

The ALJ did not accept Dr. Hicken's assessment of Dinkins's mental limitations. An ALJ can reject a treating physician's opinion for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ's reasoning was not clear and convincing. The ALJ noted that Dr. Hicken's assessment was comprised of check marks on a worksheet without a written narrative, explanation, findings in treatment records describing symptoms of depression or anxiety, or any statement of the clinical, diagnostic basis for his conclusions. Admin. R. 14. The ALJ also said Dr. Hicken did not refer Dinkins for assessment or treatment by a mental health provider. *Id.* These reasons leave me unconvinced that the ALJ properly considered Dr. Hicken's opinion of Dinkins's mental capacity. Accordingly, I remand this issue to permit the Commissioner to obtain a psychological evaluation.

Dinkins testified that she could not return to her past work as a telemarketer, in part because glaucoma prevented her from reading a computer screen or a printed script. Admin. R. 273. The ALJ found no objective medical evidence to support Dinkins's assertion that she has functional limitations from glaucoma. *Id.* at 18. In October 2004, Fred Williams, M.D., performed a neurosurgical evaluation of Dinkins's lumbar spine. This included a fundoscopic examination which

revealed unspecified evidence suggesting glaucoma on the left. Dr. Williams advised Dinkins to follow up with an opthalmalogist for pressure testing. *Id.* at 164. There is no evidence that Dinkins followed this advice. The next mention of glaucoma in the record is on the physical residual functional capacity worksheet completed by Dr. Hicken in December 2007. Dr. Hicken indicated Dinkins had several visual limitations due to glaucoma which he believed Dinkins followed through an opthalmalogist. *Id.* at 257. However, Dinkins did not produce any records showing that she was under the care of an opthalmalogist, or that she had been diagnosed with glaucoma through objective testing. Furthermore, Dinkins testified that she receives no treatment for glaucoma and has taken only antibiotic eye drops for an eye infection. *Id.* at 276. Accordingly, Dinkins has not met her burden of showing a medically determinable impairment due to glaucoma, much less functional limitations attributable to that condition.

Dinkins has a documented history of hypertension predating the alleged onset of disability. *Id.* at 237-38, 242. She takes prescribed medications for this and reports no side effects. *Id.* at 181, 223, 237. At least one provider noted noncompliance with medication therapy contributing to a lack of blood pressure control. *Id.* at 237. No medical provider has indicated any functional limitation resulting from hypertension, however, and Dinkins did not claim hypertension precludes her from performing any specific work-related activity in her disability application, testimony, or briefs to this court. Accordingly, the ALJ did not fail to consider any evidence of functional impairments from hypertension.

I partially agree with Dinkins's argument that the ALJ should have recontacted her physicians to establish functional limitations attributable to her nonsevere impairments. It is the claimant's burden to provide a complete record with information about his or her medical condition and to

5 - OPINION AND ORDER

identify the sources of such information. 20 C.F.R. §§ 404.704, 404.1512(a), 416.912(a), 404.1513(e), 416.913(e). The regulations require the Commissioner to recontact a claimant's medical source when the evidence "is inadequate for us to determine whether you are disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The record of this case does not present ambiguities regarding glaucoma, or hypertension, and the record was adequate for the ALJ to determine that Dinkins has no functional impairments from those conditions. Dinkins simply failed to present evidence supporting functional limitations attributable to these conditions. However, the ALJ failed to properly consider Dr. Hicken's opinion regarding Dinkins's mental impairments and I find it necessary to remand for that purpose.

**II.     RFC Assessment**

The RFC assessment describes the work-related activities a claimant can do on a sustained, regular and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 * 5.

The ALJ assessed Dinkins with the RFC to perform work at the sedentary level of exertion, including the ability to lift up to ten pounds occasionally and less than ten pounds frequently and to sit for less than six hours in an eight hour work day. She was further limited in that she must have the option to change position at least every half an hour, should only occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl, and should avoid ladders, ropes and scaffolds. Admin. R. 15-16.

Dinkins asserts the ALJ's RFC assessment does not accurately reflect her functional limitations because he improperly rejected limitations in Dr. Hicken's opinion, did not account for the observations of the lay witness, and ignored medication side effects. She argues the ALJ's findings do not show she can sustain full time work.

### A. Dr. Hicken's Opinion

Dr. Hicken began giving Dinkins primary care in August 2005. *Id.* at 229-30. Dr. Hicken reviewed Dr. Williams's notes related to her history of degenerative disc disease. Dr. Hicken noted Dinkins's range of motion in the lumbar spine was restricted due to subjective pain; her physical examination was otherwise unremarkable. *Id.* at 229. On this basis, at his first encounter with Dinkins, Dr. Hicken opined she was disabled:

> She will not likely be able to pursue meaningful work again, especially in her field as a childcare worker. She is unlikely to ever be able to lift objects greater than 10 pounds in the future, and I would support her claim for disability.

*Id.* at 229.

Dr. Hicken's finding that Dinkins could not engage in work requiring her to lift greater than ten pounds is reflected in the ALJ's RFC assessment. Similarly, in January 2006, Dr. Hicken described functional limitations reflected in the ALJ's RFC assessment.

> I do not believe that Rosetta is capable of doing any work involving her lifting greater than 10 pounds. Also, she is not fit to do any work where she is sitting in the same position for longer than 30 minutes at a time.

*Id.* at 222. The ALJ accepted all of the functional limitations Dr. Hicken describe, but not the vocational opinion that Dinkins could not engage in any meaningful work. *Id.* at 15-16, 18.

7 - OPINION AND ORDER

In October 2006, Dr. Hicken wrote a disability letter in support of Dinkins's application for a motorized scooter. He indicated Dinkins had degenerative disc disease of the lumbar spine with no further surgical options. He said Dinkins could not walk even one block without severe pain and a motorized scooter would improve her quality of life.

> She is totally disabled and not able to pursue meaningful work of any kind. She cannot lift more than 10 lbs, and is not able to do any prolonged standing. She cannot do bending or lifting activities.

*Id.* at 215.

The functional limitations in this letter remain reasonably consistent with the ALJ's RFC assessment. *Id.* at 15-16. The ALJ rejected only the vocational conclusion that Dinkins could not perform work of any kind. *Id.* at 18.

In January 2007, Dr. Hicken completed a residual functional capacity worksheet indicating still greater restrictions. He opined Dinkins could lift less than 10 pounds occasionally and could not lift frequently at all. He said she could stand less than 2 hours total during a workday with normal breaks. He opined she could sit less than a total of 6 hours in a workday with normal breaks, and needed to be able to alternate sitting and standing. Dr. Hicken also indicated Dinkins could never perform activities involving climbing, balancing, kneeling, crouching, or crawling. As noted previously, Dr. Hicken found Dinkins's vision limited by glaucoma. *Id.* at 254-60. He concluded that Dinkins was "unable to work due to her physical limitations and pain, but also her mental health condition." *Id.* at 259.

The ALJ failed to provide clear and convincing reasons for discounting Dr. Hicken's RFC assessment worksheet. Accordingly, the case must be remanded for the Commissioner to reconsider

that evidence and reassess Dinkins's RFC. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### B. Lay Witness Statements

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

In September 2005, Dinkins's friend Jacqueline Robinson provided a written questionnaire. Robinson indicated Dinkins lived with a granddaughter who helped her with personal care and household chores. She said Dinkins did little cooking and no yard work because she must sit or lie down a great deal due to pain. Dinkins could iron clothes from a seated position. She could walk very briefly and then rest for five minutes before she resumed walking. Robinson said Dinkins did not engage in social activities, but could understand instructions, pay attention, get along with authority figures, handle stress, cope with changes in routine, and had never been fired from a job. Admin. R. 83-90.

In January 2008, Robinson appeared as a witness at Dinkins's disability hearing before the ALJ. Robinson testified that Dinkins has difficulty with mobility. She often stops while trying to walk to the store and calls Robinson to give her a ride. Robinson stated Dinkins cannot lift anything heavy, including a child. Robinson observed that after sitting for very long, Dinkins would stand

and lean against a wall. Robinson testified that Dinkins goes to sleep after taking her medication. *Id.* at 280-85.

The ALJ found Robinson's statements describing Dinkins's activities credible. Because the ALJ found Robinson's statements credible and did not reject her testimony, he was not required to provide reasons for doing so. I find no error in the ALJ's evaluation of the evidence provided by the lay witness. The Commissioner may revisit the lay witness testimony in proceedings after remand if he deems it useful to do so.

### C.    Remaining Arguments

Dinkins argues the ALJ failed to consider evidence that the side effects of her medications imposed additional functional limitations that should have been included in her RFC assessment. She cites her testimony that unspecified medications "made me kind of sleepy at times," and lay witness testimony indicating she sleeps after taking medications. Admin. R. 274, 285. Dinkins contends the case must be remanded to assess these side effects because the ALJ did not mention them.

In proceedings after remand, the Commissioner can assess this evidence, in context with the record as a whole, to determine whether these statements reasonably establish the presence of ongoing side effects with significant impact on Dinkins's ability to perform basic work activities.

Dinkins next argues the ALJ's RFC assessment does not establish her ability to engage in full time work because he found her able to sit for less than six hours during an 8-hour workday and made no finding with respect to her ability to walk or stand. In fact, the ALJ's RFC assessment includes a finding that she is able to stand and walk, although she must spend the majority of the day seated. The ALJ found Dinkins capable of sedentary work, which is defined by the regulations to

include the ability to stand or walk for a total of up to one third of the work day. SSR 96-9p, 1996 WL 374185 at *3. The RFC assessment contemplates Dinkins remaining seated for up to one half hour at a time, with brief periods of standing or walking interspersed throughout the day, for a total of up to one third of the workday. Admin. R. 290. Thus I reject Dinkins's argument that the ALJ's RFC assessment fails to establish her ability to engage in full time work. Nonetheless, the ALJ must reassess her RFC in proceedings after remand.

### III.    Vocational Evidence

The ALJ elicited testimony from a vocational expert ("VE") based on the RFC assessment described above and the VE testified that such a person could perform Dinkins's past work as a telemarketer. Admin. R. 289-90. However, I am unconvinced that the ALJ's RFC assessment accurately described Dinkins's functional limitations. Accordingly, the VE's testimony did not provide substantial evidence to support the ALJ's conclusion that Dinkins can perform her past work and is not disabled within the meaning of the Social Security Act.

### CONCLUSION

For these reasons, I reverse the Commissioner's decision and remand for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this    9th    day of March, 2010.

 /s/ Garr M. King
GARR M. KING
United States District Judge

include the ability to stand or walk for a total of up to one third of the work day. SSR 96-9p, 1996 WL 374185 at *3. The RFC assessment contemplates Dinkins remaining seated for up to one half hour at a time, with brief periods of standing or walking interspersed throughout the day, for a total of up to one third of the workday. Admin. R. 290. Thus I reject Dinkins's argument that the ALJ's RFC assessment fails to establish her ability to engage in full time work. Nonetheless, the ALJ must reassess her RFC in proceedings after remand.

### III.    Vocational Evidence

The ALJ elicited testimony from a vocational expert ("VE") based on the RFC assessment described above and the VE testified that such a person could perform Dinkins's past work as a telemarketer. Admin. R. 289-90. However, I am unconvinced that the ALJ's RFC assessment accurately described Dinkins's functional limitations. Accordingly, the VE's testimony did not provide substantial evidence to support the ALJ's conclusion that Dinkins can perform her past work and is not disabled within the meaning of the Social Security Act.

### CONCLUSION

For these reasons, I reverse the Commissioner's decision and remand for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this    9th    day of March, 2010.

/s/ Garr M. King
GARR M. KING
United States District Judge